IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:19-cr-00057-REP |
| ) | |
| STEFAN RADU CIULEA, ) | |
| ) | |
| *Defendant*. ) | |

**UNITED STATES' POSITION WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and Brian R. Hood, Assistant United States Attorney, hereby submits its position with respect to the sentencing factors for the defendant, STEFAN RADU CIULEA. The United States has reviewed and has no objections to the Presentence Investigation Report (PSR). The PSR calls for a guideline range of 33-41 months' incarceration on Count One, which charged defendant with conspiracy to commit bank fraud, and 24 months' consecutive on Count Four, which charged the defendant with aggravated identity theft, yielding a total guideline range of 57-65 months. For the reasons set below, the Government recommends that the Court impose a guideline range sentence of 60 months' incarceration.

**I.  CASE SUMMARY**

The Statement of Facts (SOF) accompanying the defendant's guilty plea and the PSR set forth the essential details of the defendant's offense. Beginning sometime prior to March 2016, and continuing to on or about June 15, 2016, the defendant, STEFAN RADU CIULEA, conspired with others to defraud financial institutions through a scheme to capture and later cash-out debit card numbers that were obtained using skimming devices placed on point-of-sale (POS)

terminals in retail stores. These skimming devices were cleverly disguised to look like the POS payment system equipment itself, and would go unnoticed to most untrained observers. Depicted below is an example of the type of skimming device that was used by members of the defendant's conspiracy:




When store customers used their payment cards to make POS transactions, the overlay skimming devices captured both their payment card numbers as well as the associated personal identification numbers (PINs) necessary to use the cards. At some point after the skimming devices were installed, a member of the conspiracy returned to the store to harvest the skimmed debit card numbers and PINs, which could be accomplished by either physically retrieving the skimming device itself or connecting to it via Bluetooth technology and downloading the

skimmed information electronically. The skimmed debit card numbers were then re-encoded onto blank plastic cards that the conspirators would use to make ATM cash withdrawals ("cash-outs") from bank accounts associated with the skimmed debit card numbers.

Surveillance video showed the defendant and his coconspirators, one of whom was his father, installing skimming devices at four different Walmart stores in Kentucky and Ohio during the period of May 11 to May 18, 2016.[1] These devices skimmed a total of 2504 payment card numbers, yielding an intended loss figure of $1,252,000. Surveillance video also showed the defendant engage in multiple cash-outs at ATMs in the Richmond area using debit account numbers that had been skimmed on or about March 30, 2016, from a Walmart Store in the Fredericksburg, Virginia area.[2] CIULEA made a total of $6,000 in cash-outs using these cards. Specific to Count Four of the indictment, on April 14, 2016, the defendant made a withdrawal of $500 from the SunTrust Bank located at 919 East Main Street, Richmond, Virginia, using an unauthorized Virginia Credit Union debit card number xxxx-xxxx-xxxx-4369, along with the corresponding PIN for that account, both of which belonged to an individual identified herein as W.E.H., who had not given the defendant or any of his coconspirators permission to use either number.

---

[1] By way of background, the Federal Bureau of Investigation (FBI) was aware of the defendant's involvement in the skimming conspiracy going back to 2016, but his whereabouts were unknown. In around November 2018, the FBI learned that CIULEA had been detained by officials with Immigration and Customs Enforcement and would be deported back to Romania in the near future. Shortly thereafter this prosecution was commenced.

[2] Investigators do not have direct evidence showing who installed the skimming devices in the Fredericksburg area or how CIULEA came into possession of these account numbers. Because of these uncertainties associated with the Fredericksburg activity, the government has sought to hold the defendant accountable at sentencing for only the debit card numbers he personally used to conduct Richmond area cash-outs and the direct losses resulting from them.

## II. SENTENCING ANALYSIS SINCE *UNITED STATES V. BOOKER*

In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court held that mandatory imposition of sentences derived from the Federal Sentencing Guidelines violated a defendant's Sixth Amendment right to a jury trial. The Court further held that district courts, while not bound to apply the Guidelines, must consult them and take them into account when sentencing, as well as the factors listed in 18 U.S.C. § 3553. *Id.* at 265.

In *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006), the Fourth Circuit described an analytical approach district courts must adhere to in determining an appropriate sentence. The *Moreland* approach requires that a district court: 1) correctly determine the applicable guideline range; 2) assess whether the guideline range satisfies the § 3553(a) factors; 3) consider any appropriate departures under the Guidelines and the case law that might also be necessary; and, finally, 4) consider, and explain, a variance to a non-guideline sentence if such a variance is still required to satisfy the factors in § 3553(a). *Moreland*, 437 F.3d at 432.

Title 18, United States Code, Section 3553(a) mandates that a sentencing court impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)(2). In determining such a sentence, § 3553 requires that the Court consider the following factors:

(1) the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes by the defendant; and

  (D) to provide the defendant with needed educational or vocational training; medical care, or other correctional treatment in the most effective manner.

### III. PRESENTENCE REPORT'S GUIDELINE ANALYSIS

The applicable guideline section for Count One, conspiracy to commit bank fraud (18 U.S.C. § 1349), is USSG §2X1.1, which cross references to the guidelines for the substantive offense of bank fraud, i.e., §2B1.1. Pursuant to §2B1.1(a)(1), defendant's base offense level is 7. Because the defendant's total loss amount falls between $550,000 and $1,500,000, a 14-level enhancement applies pursuant to §2B1.1(b)(2)(A). CIULEA also receives a 2-level enhancement under §2B1.1(b)(11)(C) because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification. With a 3-level reduction for acceptance of responsibility under USSG §3E1.1, the defendant's Total Offense Level is 20. The defendant has a Criminal History Category of I; therefore, his guideline range for Count One is 33-41 months. The applicable guideline section for aggravated identity theft as charged in Count Four is §2B1.6, which calls for imposition of the statutory mandatory minimum sentence of 24 months' incarceration. CIULEA's total guideline range is thus 57-65 months.

### IV. FACTORS UNDER 18 U.S.C. § 3553(A)(1)

#### A. Nature and Circumstances of the Offense

CIULEA's point of sale skimming activity is one more example of what is a large burden of access device fraud placed on American businesses and banks by illicit skimming schemes. Other examples of device skimming schemes target fuel pumps and ATMs. The government has not found reliable estimates for the annual fraud loss attributable to skimming POS systems per se, but fraud losses to U.S. banks resulting from the related problem of

ATM skimming are conservatively estimated to be in the range of one to two billion dollars annually.[3]

A quick review of open source reporting reveals that ATM skimming operations are very often linked to larger organized crime groups.[4] Information available to the government indicates that is the case with CIULEA. Given the typically large scope of skimming groups and the economic harm they inflict, this Court should give suitable consideration to the § 3553(a)(2)(B) factor of deterrence in fashioning an appropriate sentence in this case.

### B.  History and Characteristics of the Defendant

#### 1.  *Criminal History*

To the best of the government's knowledge CIULEA has no history of prior criminal convictions. He is therefore a Criminal History Category I for guideline purposes.

#### 2.  *Personal History and Characteristics*

CIULEA, who is 30 years old, was born in Craiova, Romania, where he spent much of his youth. His parents separated when he was approximately 11, and at age 14 he moved from Romania to Italy to live with his father and attend school there. The defendant returned to Romania when he was 20. For the past seven years the defendant has been in a relationship with a woman in Romania who is the mother of his five-year-old son. Since moving to the United

---

[3] https://www.cnbc.com/2017/09/15/card-sharks-atm-skimming-grows-more-sophisticated.html. See also the white paper published by ATM manufacturer Diebold entitled *ATM Skimming: Modern Day Bank Robbery*, a copy of which is provided as Attachment 1.

[4] *See, e.g.,* https://www.fbi.gov/news/stories/atm-skimming; https://fox11online.com/news/local/fdl-police-warn-of-organized-crime-group-making-its-way-through-the-area; https://www.registerguard.com/news/20181102/romanian-teens-arrested-in-springfield-in-connection-to-atm-skimming-organized-crime; https://www.reviewjournal.com/crime/courts/bulgarian-crime-boss-gets-prison-in-atm-skimming-scheme/; and https://www.seattlepi.com/local/article/Police-Man-arrested-for-ATM-skimming-has-1422492.php.

States four years ago, the defendant has only had telephone contact with his son and the son's mother.

On April 20, 2015, the defendant entered the United States and attempted to obtain asylum, which was ultimately denied by immigration officials. In his interview with the probation officer who prepared the PSR, the defendant essentially admitted that his true motivation for coming to the United States was economic. For most of his time in the country, CIULEA lived in various locations in California and Las Vegas, Nevada, though his participation in his skimming conspiracy obviously took him to several other states, and he was finally arrested on October 2, 2018, by Customs and Border Patrol agents in Erie, Pennsylvania, during a trip to visit his cousin. (PSR ¶¶ 31, 39).

During his PSR interview CIULEA stated that he had used marijuana every couple of days for the past 10 years, and three years ago started using powder cocaine "every few months" at parties and discos. Prior to his arrest he would drink two to four beers a day, but never got drunk. While he has never been to substance abuse treatment, he believes he would benefit from the same. (PSR ¶ 42). The defendant was diagnosed with anxiety and depression following his arrest, though he had no history of mental health issues previously. CIULEA believes that his anxiety and depression are adequately controlled by prescribed medication and that he does not need or want the services of a mental health counselor. (PSR ¶ 41).

V. FACTORS UNDER 18 U.S.C. § 3553(A)(2)

A. Seriousness of the Offense

As discussed above, debit card skimming inflicts multi-billion dollar losses on American businesses every year. CIULEA and his coconspirators skimmed thousands of debit cards in the short two-month period that law enforcement actually knows about. Serious criminal conduct

such as this warrants a serious sentence, as reflected by the applicable guideline range in this case.

### B. Need to Deter Future Criminal Conduct

As likewise noted above, the defendant's conduct, while serious, is but a small piece of a much larger and significant problem. A strong, guideline-range sentence in this case should help provide a measure of deterrence, not just to the defendant himself but also to the organized crime groups that are responsible for so much of the skimming activity that drains billions of dollars annually from the legitimate economy.

### C. Need to Protect the Public from the Defendant's Future Criminal Conduct

A sentence of 60 months' incarceration would similarly provide appropriate protection to the public from the defendant's future criminal conduct for the period of time he is incarcerated.

### D. Need to Provide Treatment to Defendant

The Bureau of Prisons has excellent resources capable of providing treatment for the substance abuse and mental health issues that the defendant has reported having.

## VI. CONCLUSION

For all of the reasons set forth above, the United States asks the court to impose a guideline range of 60 months' incarceration.

          Respectfully submitted,

          G. ZACHARY TERWILLIGER
          UNITED STATES ATTORNEY

By:   /s/ Brian R. Hood
      Assistant United States Attorney
      United States Attorney's Office
      919 East Main Street, Suite 1900
      Richmond, VA 23219
      Telephone: (804) 819-5400
      Email: brian.hood@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **July 25, 2019**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties of record.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:   /s/  Brian R. Hood
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (804) 819-5400
Email: brian.hood@usdoj.gov